IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 12-cv-00375-WYD-KMT

MICHAEL A. COLLINS, individually,

      Plaintiff,

v.

BAC HOME LOANS SERVICING LP, a/k/a BANK OF AMERICA N.A., a/k/a COUNTRY
WIDE HOME LOANS SERVICING LP, and its agents, employees and affiliates individually
"whose true names are unknown",

      Defendants.

_____

## RECOMMENDATION AND ORDER OF UNITED STATES MAGISTRATE JUDGE
_____

**Magistrate Judge Kathleen M. Tafoya**

      This case comes before the court on "Bank of American's (sic) Motion for Summary

Judgment" (Doc. No. 13, filed March 1, 2012 ["Mot."]), "Plaintiff's Verified Response to BAC

Home Loans Servicing LP Motion for Summary Judgment" (Doc. No. 20, filed March 29, 2012

["Resp."]), and "Bank of America's Reply in Support of its Motion for Summary Judgment"

(Doc. No. 23, filed April 12, 2012 ["Reply"]).  After briefing on the motion was complete,

Plaintiff submitted a "Motion for Leave to Withdraw and File an Amended Response

Concerning BAC Home Loans Servicing LP Motion for Summary Judgment" (Doc. No. 48, filed

September 25, 2012), and Defendant Bank of America responded (Doc. No. 51, filed October 16,

2012).  Although Plaintiff has yet to file a reply, the court finds that his matter is nonetheless ripe

for review and recommendation.  *See* D.C.COLO.LCivR 7.1C ("Nothing in this rule precludes a

judicial officer from ruling on a motion at any time after it is filed.").

## FACTUAL AND PROCEDURAL BACKGROUND

Given that this is Plaintiff's second lawsuit related to foreclosures on mortgages he

undertook in 2005, some background regarding the first lawsuit is necessary to resolve issues in

the current lawsuit.  The first lawsuit, *Collins v. Ace Mortgage Funding, LLC et al.* ("2008

Lawsuit"), was brought *pro se* in state court and removed to federal court on August 12, 2008.

(*See* 08-cv-01709-REB-KLM, Doc. No. 1.)  In the 2008 Lawsuit, Plaintiff sued Countrywide

Home Loans ("Countrywide") for negligence, breach of contract, breach of implied/express

warranties, fraud and fraudulent misrepresentation, as well as violations of Colo. Rev. Stat. § 38-

40-105 (unconscionable acts and practices in certain mortgage loan transactions), Colo. Rev.

Stat. § 6-1-105 (deceptive trade practices), and breach of fiduciary duty.  (*See id*.)

Plaintiff's claims in the 2008 Lawsuit arose from his purchase of two investment

properties located at 17347 East Asbury Circle and 25107 East Park Crescent in Aurora,

Colorado in 2005 ("2005 Loans") funded by loans from Countrywide.  (*See*

08-cv-01709-REB-KLM, Recommendation of Magistrate Judge, Doc. No. 104 at 2 ["2008

Rec."].)  According to Plaintiff, during the loan application process, a representative from Ace

Mortgage Funding ("A.M.F.") (the now-bankrupt mortgage broker Plaintiff also sued in the

2008 Lawsuit) told Plaintiff that he would qualify for the first mortgage loan secured by the

Asbury Circle property through Countrywide, and would then be able to refinance that loan

within thirty days for an additional $30,000 necessary to repair the property.  (*Id*. at 2-3.)

Plaintiff contends that when he told the A.M.F. representative that he would be unable to purchase the Asbury Circle property unless it could be refinanced, the A.M.F. representative promised him that the refinance of the loan had already been approved.  (*Id*. at 3.)  Plaintiff ultimately applied for the original loan with Countrywide, and in doing so, signed a loan agreement including a clause that stated, "'Applicable Law' means all controlling applicable federal, state and local statutes."  (Resp., Ex. 2 ¶ J.)  The loan proceeds were used to purchase the Asbury Circle property, which collateralized the loan.  (2008 Rec. at 3.)  Separately, Plaintiff completed the loan application process for the Park Crescent property, and the proceeds of that loan were used to purchase that property, which, in turn, collateralized that loan.  (*Id*. at 3-4.)

Within thirty days after the initial loan closed, Plaintiff contacted the A.M.F. representative, who informed him that the refinance loan had been denied because of issues with Plaintiff's credit report.  (*Id*. at 3.)  As a result of his inability to refinance, Plaintiff could not make improvements to the property.  He claimed that this caused him not to be able to make the payments on the loan.  (*Id*.)  As a result of his failure to make his mortgage payments, the Asbury Circle property was foreclosed on April 27, 2006.  (*Id*.)  Plaintiff then tried to refinance the loan associated with the Park Crescent property, and was denied by Countrywide based on the difficulties Plaintiff had with the Asbury Circle property, which had negatively impacted his credit.  (*Id*. at 4)  Plaintiff fell behind on payments for the loan on the Park Crescent property, but ultimately was able to negotiate a modified payment schedule with Countrywide.  (*Id*.)  However, Plaintiff fell behind on those modified payments as well.  (*Id*.)  When Plaintiff became aware that some of his late payments were not accepted by Countrywide, he contacted them by

3

telephone in August 2006, and was told by an agent that the Park Crescent property had already

been sold at a foreclosure sale.  (*Id*. at 4-5)  Plaintiff subsequently brought the 2008 Lawsuit,

which centered on interactions with Countrywide in obtaining the initial loans, the denial of the

refinancing loans, and Countrywide's actions throughout the foreclosure process.  (*Id*. at 2-7.)

On May 19, 2009, Magistrate Judge Kristen L. Mix recommended that Countrywide's

motion for summary judgment be granted, and that Plaintiff's motion for judgment on the

pleadings be denied.  (*Id*. at 24.)  The 2008 Recommendation was adopted by District Judge

Robert E. Blackburn on June 23, 2009 over Plaintiff's objections, and the case was ordered

administratively closed on August 28, 2009.  (*See* 08-cv-01709-REB-KLM, Doc. Nos. 110, 119.)

Meanwhile, in July 2009, Plaintiff began sending letters to various credit reporting

agencies ("CRAs"), disputing the manner in which the two loans appeared on his credit reports.

(*See* Doc. No. 4, Exs. 1-23.)  By this time, Defendant Bank of America ("BAC") had taken over

from Countrywide.  (*See id*.)  As the bases for his disputes, Plaintiff told the CRAs that he did

not owe a debt to BAC; that he, rather than BAC had closed the loan accounts; and that he had

never been late making his payments.  (*Id*.)  As a result of the disputes Plaintiff sent to the

CRAs, the CRAs sent inquiries to the lender on the loans, BAC.  (Mot., Exs. 2, 6.)

Each time BAC received an inquiry from a CRA in response to Plaintiff's disputes, BAC

claims it investigated and confirmed that the information reported was accurate.  (*See id*.)  The

results of BAC's investigation were then reported to the corresponding CRA.  (*See id*.)

Defendant BAC never officially designated Plaintiff's debt as "disputed" when it relayed its

findings back to the CRAs, since the CRAs were the recipients of Plaintiff's disputes in the first

place.[1]  (*See id*.)  Upon receipt of the verification from Defendant, the CRAs then informed

Plaintiff that the information had been verified, with no significant changes.  (*See id*.; Doc. No.

4, Exs. 1-23.)  Notably, Plaintiff never contacted Defendant BAC directly to dispute the status of

either of the two loans on his credit reports, or contest the underlying validity of the loans.

Plaintiff ultimately filed the instant case *pro se* on December 29, 2011 in state court, and

the case was once again removed by Defendant to federal court on February 13, 2012.  (Doc. No.

1.)  Plaintiff asserts eight different claims hinging on Defendant's failure to report his account as

disputed.  (Doc. No. 4 ["Compl."].)  The first and second claims allege violations of the federal

Fair Credit Reporting Act ("FCRA"), with the first claim being willful violation under 15 U.S.C.

§ 1681n, and the second claim being negligent violation under 15 U.S.C. § 1681o.  (*Id*. at 8-10.)

In claims four, seven, and eight, Plaintiff alleges state common law torts of negligence, invasion

of privacy, and infliction of emotional and mental distress.  (*Id*. at 11, 13-14.)  Finally, Plaintiff

asserts several state statutory law claims: that Defendant violated Colorado's Uniform Consumer

Credit Code ("UCCC") in claim three, (*id*. at 10-11); that Defendant was negligent *per se* under

the UCCC in claim five, (*id*. at 11-12); and in claim six, that Defendant violated the Colorado

Consumer Protection Act, (*id*. at 12-13).  Although all of Plaintiff's claims concern Defendant's

reports to the CRAs, some claims also appear to implicate Countrywide's efforts to originally

collect on the 2005 Loans.

---

[1]Although offered only as an assertion in Plaintiff's papers with no support, (Resp. at 5), and never explicitly confirmed by Defendant, or by any non-party CRA, the important consequence of a CRA "marking" an account as disputed is that the CRA does not figure that account into its credit score/rating calculations.  In essence, it is as if the debt does not exist.

In its Motion, Defendant BAC has moved for summary judgment on all claims. Defendant maintains that its actions were in compliance with FCRA, and alternatively, that Plaintiff has no private right of action for the conduct he alleges. (Mot. at 2.) Defendant also maintains that any common law torts and state statutory law claims are barred by preemption, as it applies to Defendant's reports to the CRAs, and by *res judicata*, as it applies to any conduct that was, or could have been, the subject of the 2008 Lawsuit. (*Id.* at 9-12.)

## LEGAL STANDARDS

### A.      *Pro Se Plaintiff*

Plaintiff is proceeding *pro se.* The court, therefore, "review[s] his pleadings and other papers liberally and hold[s] them to a less stringent standard than those drafted by attorneys." *Trackwell v. United States*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted); *see also Haines v. Kerner*, 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972) (holding allegations of a pro se complaint "to less stringent standards than formal pleadings drafted by lawyers"). However, a pro se litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) (citations omitted). A court may not assume that a plaintiff can prove facts that have not been alleged, or that a defendant has violated laws in ways that a plaintiff has not alleged. *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526, 103 S.Ct. 897, 74 L.Ed.2d 723 (1983); *see also Whitney v. New Mexico*, 113 F.3d 1170, 1173–74 (10th Cir. 1997) (a court may not "supply additional factual allegations to round out a plaintiff's complaint"); *Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991)

(the court may not "construct arguments or theories for the plaintiff in the absence of any discussion of those issues").

> **B.**    ***Summary Judgment***

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The moving party bears the initial burden of showing an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  "Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter." *Concrete Works, Inc. v. City & County of Denver*, 36 F.3d 1513, 1518 (10th Cir. 1994) (citing *Celotex*, 477 U.S. at 325).  The nonmoving party may not rest solely on the allegations in the pleadings, but must instead designate "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324; *see also* Fed. R. Civ. P. 56(c).  A disputed fact is "material" if "under the substantive law it is essential to the proper disposition of the claim." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  A dispute is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Thomas v. Metropolitan Life Ins. Co.*, 631 F.3d 1153, 1160 (10th Cir. 2011) (citing *Anderson*, 477 U.S. at 248).

When ruling on a motion for summary judgment, a court may consider only admissible evidence. *See Johnson v. Weld County, Colo.*, 594 F.3d 1202, 1209-10 (10th Cir. 2010).  The factual record and reasonable inferences therefrom are viewed in the light most favorable to the

party opposing summary judgment.  *Concrete Works*, 36 F.3d at 1517.  Moreover, because

Plaintiff is proceeding *pro se*, the court, "review[s] his pleadings and other papers liberally and

hold[s] them to a less stringent standard than those drafted by attorneys."  *Trackwell v. United

States*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted); *see also Haines v. Kerner*, 404

U.S. 519, 520-21 (1972) (holding allegations of a *pro se* complaint "to less stringent standards

than formal pleadings drafted by lawyers").  At the summary judgment stage of litigation, a

plaintiff's version of the facts must find support in the record.  *Thomson v. Salt Lake Cnty.*, 584

F.3d 1304, 1312 (10th Cir. 2009).  "When opposing parties tell two different stories, one of

which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court

should not adopt that version of the facts for purposes of ruling on a motion for summary

judgment."  *Scott v. Harris*, 550 U.S. 372, 380 (2007); *Thomson*, 584 F.3d at 1312.

## ANALYSIS

### A.     *Motion to File Amended Response*

Previously, Plaintiff attempted to amend his response after briefing was complete by

submitting an "Amended and Supplemental Verified Response," an accompanying motion for

leave to amend, and an accompanying motion for leave to exceed this district's usual page limit.

(Doc. Nos. 43-45, filed September 19, 2012.)  The court denied those motions in a minute order

on the basis that they constituted a surreply, which local rule D.C.COLO.LCivR 7.1C does not

allow.  (*See* Doc. No. 47, filed September 20, 2012.)  Plaintiff now appears to have submitted

substantially the same documents in the guise of being allowed to substitute his new pleading for

his previous response to Defendant's motion.  Surveying the content of the instant motion, the

8

court finds it is primarily rebuttal to Defendant BAC's argument that Plaintiff's claims are barred by *res judicata*. (*See* Doc. No. 48 at 8-15.) Plaintiff's submission is clearly a prohibited surreply.

The Tenth Circuit has held that a district court has discretion to permit a written surreply brief on a motion for summary judgment if the reply brief raises "new material," which may consist of new legal arguments or factual evidence. *See Green v. New Mexico*, 420 F.3d 1189, 1196 (10th Cir. 2005). Defendant BAC raised the issue of *res judicata* in its original Motion, not for the first time in a reply. (*See* Mot. at 8-9, 11-12.) Therefore, Plaintiff had ample opportunity to respond to that argument. The court concludes that Defendant BAC would be prejudiced if Plaintiff's submissions were accepted because Defendant BAC would be required to draft and file a replacement reply to Plaintiff's replacement response. The court is already aware of the parties' arguments without never-ending re-drafting. Additionally, the proposed amended response fails to shed light upon the crux of Plaintiff's claims; it remains a mystery whether Plaintiff is decrying BAC's loan collection procedures – a topic litigated in the 2008 Lawsuit – or whether Plaintiff brings claims exclusively for failure to report a debt as "disputed." Ultimately, the court has been required to address the pending claims from both perspectives, thus negating any value to substituting one response for another. Accordingly, Plaintiff's motion to withdraw and amend his response is denied.

**B.      *Violations of 15 U.S.C. §§ 1681n and o***

Congress adopted FCRA with the understanding that "[t]here is a need to insure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and

a respect for the consumer's right to privacy." 15 U.S.C. § 1681(a)(4). To realize this goal, the statute requires that "consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce [. . .] in a manner which is fair and equitable to the consumer." 15 U.S.C. § 1681(b). Congress recognized that part of the process lies in the hands of "furnishers of information."[2] 15 U.S.C. § 1681s-2. Section 1681s-2 generally prohibits furnishers from transmitting inaccurate information to CRAs. 15 U.S.C. § 1681s-2(a)(1). The statute requires a furnisher to correct and update information it sends to CRAs such that it is "complete and accurate." 15 U.S.C. § 1681s-2(a)(2). Moreover, a furnisher has a specific affirmative duty if a consumer disputes any information *directly with* the furnisher:

> [i]f the completeness or accuracy of any information furnished by any person to any consumer reporting agency *is disputed to such person by a consumer*, the person may not furnish the information to any consumer reporting agency without notice that such information is disputed by the consumer.

15 U.S.C. § 1681s-2(a)(3) (emphasis added). It is undisputed that Plaintiff did not "dispute" his loans directly with Defendant BAC prior to Defendant's furnishing information to CRAs, therefore rending section 1681s-2(a) inapplicable.

Section 1681s-2(b), on the other hand, outlines five specific duties that only arise in the event that a furnisher receives notice *from a CRA* of "a dispute with regard to the completeness

---

[2]"The FCRA uses the term 'furnishers of information' but does not define it. The term 'furnishers of information' is generally understood to include various types of creditors, such as banks and other lenders, that provide credit information about their customers to other entities that issue consumer reports about the customers' credit worthiness." *Ross v. Washington Mut. Bank*, 566 F. Supp. 2d 468, 474 n.1 (E.D.N.C. 2008) (internal citations omitted). Defendant BAC does not dispute that it is a furnisher of information for purposes of FCRA. (*See* Doc. No. 12 ¶ 3.)

or accuracy of any information provided [. . .] to a consumer reporting agency." 15 U.S.C. § 1681s-2(b)(1).  That is clearly the situation here.  When a CRA provides notice of a disputed credit entry it receives to a furnisher, this section mandates that the furnisher conduct an investigation into the dispute by reviewing all relevant information provided to the furnisher by the CRA, and report the results back to the CRA.  15 U.S.C. § 1681s-2(b)(1)(A)-(C).  Should the furnisher discover that the information it has been providing to any CRA is incomplete or inaccurate, the furnisher must notify all other CRAs to which it provides information of the error, 15 U.S.C. § 1681s-2(b)(1)(D), and either modify, delete, or block reporting of the information to the CRAs.  15 U.S.C. § 1681s-2(b)(1)(E).

There is no private right of action if a furnisher violates its affirmative duties under section 1681s-2(a), that is, when a consumer brings his dispute *directly to the furnisher*.  *Sanders v. Mountain. American Federal Credit Union*, 689 F.3d 1138, 1147 (10th Cir. 2012)*; Pinson v. Equifax Credit Information Services*, 316 F.App'x. 744, 751 (10th Cir. 2009) (unpublished). *See also Llewellyn v. Shearson Financial Network, Inc.*, 622 F. Supp. 2d 1062, 1072 (D. Colo. 2009).  As the Tenth Circuit has explained, the private cause of action for reporting inaccurate information is limited to claims against a CRA.  *Sanders*, 689 F.3d at 1147.

Nonetheless, because section 1681s-2(b) requires that information provided to CRAs not be inaccurate or incomplete after an investigation has been triggered, the question has arisen whether a duty to report information as "disputed" by the furnisher contained in section 1681s-2(a) is actionable under section 1681s-2(b).  Some courts have held that it might be; however, an

11

examination of those cases, relied on by Plaintiff in his Response, reveals that they are inapposite here.

In *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147 (9th Cir. 2009), and *Saunders v. Branch Banking & Trust Co. of VA*, 526 F.3d 142 (4th Cir. 2008), courts addressed the situation where a consumer had been disputing a debt directly with a furnisher, but the furnisher did not report the consumer's debt as having been disputed when he debt was negatively reported to the CRAs. In both cases, the plaintiff-consumer refused to pay an alleged debt to a banking institution, and took extensive steps to protest the validity of the alleged debt with the banking institution *directly*. When the debts began to appear on each plaintiff's credit reports in a negative fashion, the consumers began dispute processes through a CRA. Again, in each case, the banking institutions conducted their investigations mandated by section 1681s-2(b), and reported the alleged debts back as delinquent or "written off" without notifying the CRAs that the consumers had been disputing the debts directly with the furnisher.

Both the Fourth and Ninth Circuits held that this failure to report the debts as disputed gave rise to a private cause of action under section 1681s-2(b) because the reporting of the debt without the accompanying notation that it is disputed created a misleading impression. These courts held that while the initial failure to report the debt as disputed was not privately enforceable, the obligation to report the debt as disputed became privately enforceable once the section 1681s-2(b) verification process was triggered because the banking institutions were already on notice that the consumer was disputing the debt. The reasoning from the Fourth and Ninth Circuit in these cases does not significantly contribute to the present case because Plaintiff

12

was not in the process of, and never was, formally disputing his debt with Defendant BAC before he began the dispute process through the CRAs. Plaintiff in this case is in an entirely different posture than the plaintiffs in *Gorman* and *Saunders*.

Plaintiff's only disputes went through CRAs, and such a process, by itself, does not independently trigger a furnisher's duty to report a debt as disputed merely because the debt has been disputed with the inquiring CRA. Plaintiff seeks to bypass this by arguing that his previous lawsuit provided the notice requirement to Defendant. (*See* Resp. at 3-4.) However, section 1681s-2(a)(8)(D) sets forth the specific requirements for submitting a notice of dispute. The court does not agree that the filing of a lawsuit meets the standard elaborated therein. More importantly, Plaintiff, in his Response, constricts the relevant dates of reporting to April and May 2011. (*See* Resp. at 4.) As these dates are long after the 2008 Lawsuit was dismissed, any potential dispute arising from that lawsuit had long since been resolved. Thus, because Defendant BAC never incurred a duty to report Plaintiff's debt as disputed, it cannot be said to be in violation of FCRA, either negligently or wilfully.

Plaintiff alternatively maintains in claims one and two that Defendant was unreasonable in its re-investigation of his dispute requests. (Resp. at 9; Compl. ¶¶ 60, 69.) Plaintiff's argument is that each time he submitted a dispute through a CRA, Defendant could have, through a reasonable investigation, discovered that Plaintiff had previously submitted disputes on these same debts, and Defendant had previously failed to report the debts as disputed. Ergo, Defendant was negligently or willfully unreasonable in its investigation because it did not do so. For the reasons below, this argument also fails.

13

As outlined above, the section 1681s-2(b) duties are those of *verification* and *correction* that arise once a furnisher of information has received notice of a dispute from a CRA, and may be privately enforceable.  Specifically, the furnisher is required to "conduct an investigation with respect to the disputed information."  15 U.S.C. § 1681s-2(b)(1)(A).  Although a reasonableness requirement is not specifically contained in the statute, courts have held such a requirement to be implied.  *See Cousineau v. Unifund CCR Partners*, No. 10-cv-03109-CMA-KLM, 2012 WL 3135687, at *3 (D. Colo. July 31, 2012).  *See also Westra v. Credit Control of Pinellas*, 409 F.3d 825, 827 (7th Cir. 2005); *Johnson v. MBNA America Bank, NA*, 357 F.3d 426 n.2 (4th Cir. 2004).  Thus, the furnisher must perform its section 1681s-2(b) investigation reasonably to avoid liability to a consumer, but a plaintiff bears the burden of showing that the furnisher's investigation was unreasonable.  *See Cousineau*, 2012 WL 3135687, at *3 (citing *Chiang v. Verizon New England Inc.*, 595 F.3d 26, 27 (1st Cir. 2010)).

"Summary judgment is proper when 'the reasonableness of the defendant's procedures is beyond question.'" *Cousineau*, 2012 WL 3135687, at *3 (quoting *Westra*, 409 F.3d at 827).  Consequently, the court looks to the procedures employed, rather than the results of the investigation.  *See Cousineau*, 2012 WL 3135687; *see also Gorman*, 584 F.3d at 1161 ("the requirement that furnishers investigate consumer disputes is procedural").  The wording of the notice of dispute, as the furnisher receives it from the CRA, constrains the investigation: the furnisher need only respond to the specific dispute, as it is received.  *Cousineau*, 2012 WL 3135687, at *3 n.5; *Westra*, 409 F.3d at 827; *Mann v. Experian Information Solutions*, No. 02 C

7694, 2004 WL 432498, at *3-4 (N.D. Ill. 2004).  Thus, a limited investigation may suffice for a limited dispute.

Plaintiff's submissions confirm the limited nature of his dispute.  Although he may have had much deeper disagreements with Countrywide and Defendant BAC regarding the 2005 Loans, his disputes through the CRAs were limited to short, conclusory assertions that he was not responsible for the debt.  (*See* Doc. No. 4, Exs. 1-23.)  He did not provide any facts or documentation to support his claims.[3]  Defendant BAC therefore needed only to confirm the factual allegations that Plaintiff did in fact owe a debt to Countrywide at one point, failed to pay that debt, and that Countrywide/BAC had foreclosed on the security interest tied to that debt.  *See Gorman*, 584 F.3d at 1160 ("Without any indication in the allegations that the initial investigation lacked reliability or that new information was available to discover, MBNA's decision not to repeat a previously-conducted investigation cannot have been unreasonable.").  Defendant's attached affidavit confirms that such facts were investigated.  (*See* Motion, Ex. 2).  Therefore, Defendant BAC went as far in its investigation as it was required to do.

More to the point, Plaintiff does not now, and did not then, offer any support that would absolve him of his liability on the underlying 2005 Loans.  Plaintiff claims he "is not in agreement with the foreclosure no matter how you slice it." (Resp. at 6.)  However, his

---

[3]The court notes that several of Plaintiff's dispute letters in late 2009 reference an attached settlement letter, (*see* Mot., Ex. 6), but such a letter does not appear to be included in Plaintiff's submissions.  Nor would it be applicable, as Plaintiff asserts in his Response that the only relevant dates of credit reporting for his claims are April and May of 2011, and those dispute letters do not fall within that time frame.  (*See* Resp. at 4.)

disagreement with *how* the foreclosure came about, or how Countrywide handled the process regarding his modification request, does not transform the original debt into one that is "disputed." For credit reporting purposes, such a disagreement does not alter the underlying fact that Plaintiff incurred the original debt, did not make payments as required, his own failure to make promised timely payments caused foreclosure against the securing property, leaving no remaining debt balance, all as accurately reported to the CRAs. Such facts are undisputed and confirmed by the Magistrate Judge's findings in the 2008 Lawsuit, Colorado state court documents, and Plaintiff's own admissions. (*See* 2008 Rec. at 22-23; Mot., Exs. 3-5; Compl. ¶¶ 10-19.) Any genuine dispute Plaintiff had with respect to the 2005 Loans was the subject of the dismissed 2008 Lawsuit. (*See* 08-cv-01709-REB-KLM, Doc. Nos. 110, 111.) Accordingly, Plaintiff cannot and has not shown that the information Defendant furnished to the CRAs was factually inaccurate. *See Chiang*, 595 F.3d at 38 (holding that a plaintiff must show that the disputed information is inaccurate under section 1681s–2(b)).

In any event, because Defendant BAC's investigations pursuant to section 1681s-2(b) were reasonable, the court finds that it could incur no liability under section 1681s-2(b). Therefore, summary judgment is properly granted in Defendant's favor on Plaintiff's first and second claims.

### C.     *Violation of and Per Se Violation of Uniform Consumer Credit Code*

In claim three, Plaintiff asserts that Defendant's failure to report his debt as disputed was a violation of Colorado's Uniform Consumer Credit Code ("UCCC"), Colo. Rev. Stat. § 5-5-101 *et seq*. (Compl. at 10-11.) In claim five, Plaintiff asserts that Defendant was *per se* negligent

specifically with respect to UCCC § 5-5-109.  (*Id.* at 11-12.)  Plaintiff argues that by signing a loan agreement with Countrywide that included a clause stating the agreement would be bound by all applicable federal and state law, the UCCC governed both the original mortgage transaction and any subsequent credit reporting once Defendant BAC took over the loan.  (Resp. at 10-11, 16.)  Defendant maintains that FCRA preempts the UCCC, and that the UCCC was not intended to cover mortgage transactions.  (Mot. at 7-8, 10.)  For the reasons below, the court agrees with Defendant that the UCCC is preempted.

Congress's authority to enact FCRA comes from the Commerce Clause of the United States Constitution.  *See* U.S. Const. art. I, § 8, cl. 2.  The Supremacy Clause of the United States Constitution gives Congress the power to preempt state law.  *See* U.S. Const. art. IV, cl. 2.  Moreover, when federal and state law are in conflict, federal law prevails.  *Southwestern Bell Wireless, Inc. v. Johnson County Bd. of County Comm'rs*, 199 F.3d 1185, 1193-94 (10th Cir. 1999).

In determining whether a state statute is preempted, "[t]he purpose of Congress is the ultimate touchstone."  *See Retail Clerks Int'l Ass'n v. Schermerhorn*, 375 U.S. 96, 103 (1963).  Federal statutes can preempt state statutes either by an express statement of preemption or by implication.  "Congress may indicate pre-emptive intent through a statute's express language or through its structure and purpose."  *Altria Grp. v. Good*, 555 U.S. 70, 76 (2008); *Tarrant Regional Water Dist. v. Herrmann*, 656 F.3d 1222, 1241-42 (10th Cir. 2011).  FCRA contains such language.

Section 1681t(b)(1)(F) explicitly removes the subject matter of section 1681s-2 from state regulation, while section 1681h(e) concerns common law claims.  However, in the Tenth Circuit, the exact degree to which FCRA preempts state law is still unsettled.  In *Stitch v. BAC Home Loans Servicing LP*, No. 10-cv-01106-CMA-MEH, 2011 WL 1135456 (D. Colo. 2011), District Judge Christine M. Arguello discussed the three approaches to FCRA preemption that have arisen in district courts within the Tenth Circuit: a total preemption approach as to all state law; a temporal approach in which the court examines whether the claim arose after the furnisher received notice; and a statutory approach in which section 1681t(b)(1)(F) is applied to state statutory claims and section 1681h(e) is applied to state common law claims.  Judge Arguello ultimately found the statutory approach to be most persuasive because it best effectuated the apparent intent of the statute to leave a limited number of common law claims intact while clearly preempting all statutory claims.  *See id*. at *9.  *See also Greene v. Capital One Bank*, No. 2:07-CV-687 TS, 2008 WL 1858882 (D. Utah 2008) (discussing at length the three preemption approaches and adopting the statutory approach).  This court agrees with Judge Arguello.

Under the statutory approach, the court applies section 1681t(b)(1)(F) to Plaintiff's third and fifth claims.  The conduct set forth in these two claims is explicitly regulated under section 1681s-2(b); therefore, the UCCC claims cannot stand.  The court thus finds that summary judgment is properly granted in Defendant BAC's favor as to claims three and five.

### D.    *Common Law Negligence and Invasion of Privacy*

In claim four, Plaintiff alleges common law negligence, and in claim seven, common law invasion of privacy.  (Compl. at 11, 13.)  Plaintiff , however, states contradictory positions as to

what conduct applies to which claims.  He alleges that the claims "are not based on information

disclosed pursuant to the requirements of [FCRA]," (Resp. at 14), and that the claims actually

accrue in relation to Defendant's unfair and unconscionable debt collection practices.  (*Id.* at 13-

14).  Contrarily, however, Plaintiff concludes that he "seeks damages on each individual tort

severally for each transmission of the same credit report." (*Id.* at 15.)  Defendant maintains that

FCRA preempts such claims, that Plaintiff has not put forth sufficient evidence to support such

claims, and that to the extent such conduct was the subject of the 2008 Lawsuit, his claims are

barred by *res judicata*.  (Mot. at 8-9, 11-12.)  The court finds that the doctrines of preemption

and *res judicata* act as a bar to both possible subsets of conduct.

## I.      *Preemption*

As previously discussed, FCRA contains express preemption language.  Section 1681h(e)

concretely addresses state common law actions and provides that

> no consumer may bring any action or proceeding in the nature of defamation, invasion of
> privacy, or negligence with respect to the reporting of information against [. . .] *any*
> *person who furnishes information to a consumer reporting agency*, based on information
> disclosed pursuant to section 1681g, 1681h, or 1681m of this title, or based on
> information disclosed by a user of a consumer report to or for a consumer against whom
> the user has taken adverse action, based in whole or in part on the report *except as to*
> *false information furnished with malice or willful intent to injure such consumer.*

§ 1681h(e) (emphasis added).  Following the statutory approach as identified by Judge Arguello

and adopted herein, the only state common law claims against a furnisher that survive

preemption are those based on malice or a willful intent to injure.  *See Greene*, 2008 WL

1858882, *6; *Stitch*, 2011 WL 1135456, at *9.

19

Plaintiff nonetheless maintains that "at this stage of the proceedings it is only necessary to plead that [Defendant's] conduct was willful and wantonly negligent.  It is not necessary to prove it."  (Resp. at 15.)  In that sense, he apparently confuses the standard necessary to survive a motion to dismiss with that necessary to survive a motion for summary judgment.  As this case is at the summary judgment stage, Plaintiff, as the nonmoving party, may not rest solely on the allegations in the pleadings, but must instead designate "specific facts showing that there is a genuine issue for trial."  *Celotex*, 477 U.S. at 324; *see also* Fed. R. Civ. P. 56(c).  Here, he must designate specific facts showing there exists a genuine issue of malice and/or willful intent by BAC to injure Plaintiff in order to sustain his state common law claims.

The court has already concluded that Defendant was under no duty to report Plaintiff's debt as disputed, and that Defendant's investigations into Plaintiff's disputes through the CRA dispute process were reasonable.  As the court has already concluded that Defendant was not in violation of FCRA as a matter of law, the malice and/or willfulness element cannot survive. Without this element, Plaintiff's fourth and seventh claims are relegated to the category of common law claims clearly intended to be preempted by section 1681h(e).  Therefore, the court finds that summary judgment is properly granted in Defendant's favor as to Plaintiff's fourth and seventh claims, to the extent they concern Defendant's credit reporting conduct.

## II.    *Res Judicata*

To the extent Plaintiff alleges his fourth and seventh claims for negligence and invasion of privacy apply to Countrywide's attempts to collect on the 2005 Loans, the court considers the application of the doctrine of *res judicata*.  Though sometimes used to refer to the narrower

concept of claim preclusion, *res judicata* traditionally subsumes both claim preclusion and issue preclusion, which is sometimes called collateral estoppel.  *See Carter v. City of Emporia*, 815 F.2d 617 n.2 (10th Cir. 1987).  The Tenth Circuit has stated:

> The doctrines of res judicata, or claim preclusion, and collateral estoppel, or issue preclusion, are closely related. Res judicata generally applies when there is a final judgment on the merits which precludes the parties or their privies from relitigating the issues that were decided or issues that could have been raised in the earlier action. A claim is barred by res judicata when the prior action involved identical claims and the same parties or their privies. Collateral estoppel, however, does not always require that the parties be the same. Instead, collateral estoppel requires an identity of issues raised in the successive proceedings and the determination of these issues by a valid final judgment to which such determination was essential.

*Frandsen v. Westinghouse Corp.*, 46 F.3d 975, 978 (10th Cir. 1995) (internal citations and quotation marks omitted). "Both doctrines require that the party or parties against whom the earlier decision is asserted had a full and fair opportunity to litigate the claim or issue." *SIL–FLO, Inc. v. SFHC, Inc.*, 917 F.2d 1507, 1520 (10th Cir. 1990) (citing *Kremer v. Chemical Constr. Corp.*, 456 U.S. 461, 481 n.22 (1982)).

Under Colorado law, *res judicata* "bars relitigation not only of all issues actually decided, but of all issues that might have been decided." *Pomeroy v. Waitkus*, 517 P.2d 396, 399 (Colo. 1973); *State Engineer v. Smith Cattle, Inc.*, 780 P.2d 546, 549 (Colo. 1989).  *Res judicata* operates as a bar to a second action on the same claim as one litigated in a prior proceeding where four elements are met: (1) finality of the first judgment, (2) identity of the subject matter,

(3) identity of claims for relief, and (4) identity of or privity between parties to the action.[4]  *Cruz v. Benine*, 984 P.2d 1173 (Colo. 1999).

First, Plaintiff's 2008 Lawsuit was decided on its merits.  All claims against Countrywide were either dismissed for failing to state a claim or summary judgment was granted in Countrywide's favor.  (*See* 2008 Rec. at 15-16, 23.)  Despite Plaintiff's contentions that "[j]est (sic) because a court dismissed a complaint because of a technicality does not mean that the issues alleged in the suit were invalid," (Resp. at 7), the 2008 Recommendation and its subsequent adoption constituted a judgment on the merits.  *See*, *e.g.*, *Federal Deposit Insurance Corp. v. Paul*, 735 F. Supp. 375, 380 (D. Utah 1990) ("[a] motion to dismiss for failure to state a claim upon which relief can be granted [is a] dismissal on the merits and is accorded res judicata effect"); C.R.P.C. 41(b)(1) ("a dismissal under this section (b) and any dismissal not provided for in this Rule, other than [for grounds not applicable here], operates as an adjudication upon the merits").

---

[4]Federal law has almost identical requirements concerning the application of claim preclusion in the Tenth Circuit and requires: "(1) the prior suit must have ended with a judgment on the merits; (2) the parties must be identical or in privity; (3) the suit must be based on the same cause of action; and (4) the party must have had a full and fair opportunity to litigate the claim in the prior suit." *In re Mersmann*, 505 F.3d 1033, 1049 (10th Cir. 2007) (citing *Nwosun v. Gen. Mills Rests.*, 124 F.3d 1255, 1257 (10th Cir. 1997)) *abrogated on other grounds by United Student Aid Funds, Inc.*, ---U.S.---, 130 S. Ct. 1367, 176 L. Ed. 2d 158 (2010).

Second, the 2008 Lawsuit involved an identity of parties because the court finds

Countrywide and Defendant BAC were in privity.  Under Colorado law, "'[p]rivity between a

party and a non-party requires both a substantial identity of interests and a working or functional

relationship . . . in which the interests of the non-party are presented and protected by the party

in the litigation.'"[5] *Hartsel Springs Ranch of Colo., Inc. v. Bluegreen*, 296 F.3d 982 (10th Cir.

2002) (quoting *Cruz*, 984 P.2d at 1176).  In the present case, Plaintiff asserts that Defendant

"Bank of America, N.A. purchased Countrywide Home Loans," (Compl. ¶ 19), and Defendant

BAC admits to being "the successor by merger to Countrywide Bank, FSB." (Doc. No. 12 ¶ 19.)

 As such, there is a sufficient identity of interest to satisfy this prong of *res judicata*.

Third, to the degree Plaintiff's claims are based on actions surrounding the foreclosure,

such actions were the subject-matter of the 2008 Lawsuit.  Magistrate Judge Mix found in the

2008 Recommendation that Plaintiff was in default on the 2005 Loans; that the modified

payment schedule Plaintiff entered into authorized Countrywide to foreclose on the property if

he defaulted, whether or not he was given a chance to cure; and that Countrywide's failure to

discuss options did not forgive Plaintiff's default.  (*See* 2008 Rec. at 22.)  Thus, to any degree

Plaintiff's fourth and seventh claims in some way stem from Countrywide's collection efforts on

the debt, they were clearly encompassed within the prior lawsuit.

---

[5]"Federal law also incorporates state law when, as with the concept of privity, the issue is more distinctively substantive." *Hartsel Springs Ranch*, 296 F.3d at 986 (quoting *Petromanagement Corp. v. Acme–Thomas Joint Venture*, 835 F.2d 1329, 1333 (10th Cir. 1998)).

Fourth, there is an identity of claims for relief between the 2008 Lawsuit and the extent to which Plaintiff seeks to apply his fourth and seventh claims to Countrywide's collection efforts. "The same claim or cause of action requirement is bounded by the injury for which relief is demanded, and not by the legal theory on which the person asserting the claim relies." *Farmers High Line Canal & Reservoir Co. v. City of Westminster*, 975 P.2d 189, 199 (Colo. 1999). Plaintiff seeks relief here for the same injury that he sought in 2008; claiming that his credit was harmed by Countrywide's conduct during the foreclosure process on the 2005 Loans.

Accordingly, to the extent that Plaintiff's fourth and seventh common law claims are based on actions relating to attempts to collect on the 2005 Loans, they are barred as a matter of law by *res judicata*.

### E.    *Violation of Colorado Consumer Protection Act*

Plaintiff's sixth claim alleges that Defendant violated the Colorado Consumer Protection Act ("CCPA"), Colo. Rev. Stat. 6-1-101 *et seq*. (Compl. at 12-13.) Particularly, Plaintiff maintains that Defendant violated Colo. Rev. Stat. § 6-1-105 by making false representations when it failed to report his debt as disputed. (*Id*. at 12.) The facts underlying the CCPA claim, however, rest on Countrywide's attempts to collect on the 2005 Loans rather than on FCRA reporting. (*See id*. ¶ 91.) Therefore, the court will treat this as a hybrid claim, subject to analysis under preemption and *res judicata*.

First, applying the statutory approach to FCRA preemption, Plaintiff's CCPA claim for Defendant's failure to report the 2005 Loans as disputed is barred as arising from a state statute, thus falling within the boundaries of preemption outlined by section 1681t(b)(1)(F). *See Greene*,

2008 WL 1858882; *Stitch*, 2011 WL 1135456.  Second, Plaintiff's CCPA claim is barred by *res judicata* as it applies to any attempts to collect on the 2005 Loans as encompassed in the 2008 Lawsuit.  Therefore, summary judgment is properly granted in Defendant's favor as to Plaintiff's sixth claim.

> ### F.      Infliction of Emotional and Mental Distress

Plaintiff's eighth, and final, claim is for infliction of emotional and mental distress. (Compl. at 13-14.)  It appears that Plaintiff asserts emotional distress claims in relation to both Defendant BAC's reporting of credit information, and Countrywide's attempts to collect on the 2005 Loans.  (Resp. at 13-15.)  Defendant argues that such a claim lacks evidentiary support. (Reply at 6.)

Under Colorado law, a claim based on intentional infliction requires (1) extreme and outrageous conduct, (2) that was engaged in recklessly, or with the intent of causing severe emotional distress, and (3) that caused the plaintiff severe emotional distress.  *Culpepper v. Pearl St. Bldg., Inc.*, 877 P.2d 877, 882 (Colo. 1994).  "Outrageous conduct is defined as conduct that is so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id*. (quoting *Destefano v. Grabrian*, 763 P.2d 275, 286 (Colo. 1988)) (internal quotation marks omitted).  To establish a claim for negligent infliction, "a plaintiff must show that the defendant's negligence created an unreasonable risk of physical harm and caused the plaintiff to be put in fear for his or her own safety, that this fear had physical consequences or resulted in long-continued emotional disturbance, and that the plaintiff's fear was the cause of the damages

sought." *Draper v. DeFrenchi-Girdineer*, 282 P.3d 489, 496 (Colo. App. 2011).  For negligent

infliction claims, the plaintiff must also show that he either suffered physical injury or was in the

"zone of danger."  *Culpepper*, 877 P.2d at 880 n.3.

The court has already found that Defendant's credit reporting was not negligent because

it was in compliance with FCRA.  To the extent that Plaintiff's eighth claim arises from

collection attempts regarding the 2005 Loans, for the same reasons set forth above in relation to

Plaintiff's fourth, sixth and seventh claims, the court finds this claim is barred as a matter of law

by the doctrine of *res judicata*.

**WHEREFORE**, for the foregoing reasons, it is

**ORDERED** that Plaintiff's "Motion for Leave to Withdraw and File an Amended

Response Concerning BAC Home Loans Servicing LP Motion for Summary Judgment" (Doc.

No. 48) is **DENIED**.  The court further respectfully

**RECOMMENDS** that Defendant "Bank of American's (sic) Motion for Summary

Judgment" (Doc. No. 13) be **GRANTED** and that all claims be dismissed and the case closed.

## ADVISEMENT TO THE PARTIES

Within fourteen days after service of a copy of the Recommendation, any party may

serve and file written objections to the Magistrate Judge's proposed findings and

recommendations with the Clerk of the United States District Court for the District of Colorado.

28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995). A

general objection that does not put the district court on notice of the basis for the objection will

not preserve the objection for de novo review. "[A] party's objections to the magistrate judge's

report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. One Parcel of Real Prop. Known As 2121 East 30th Street, Tulsa, Okla.*, 73 F.3d 1057, 1060 (10th Cir. 1996). Failure to make timely objections may bar de novo review by the district judge of the magistrate judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge. *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (a district court's decision to review a magistrate judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule"); *One Parcel of Real Prop.*, 73 F.3d at 1059-60 (a party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review); *Int'l Surplus Lines Ins. Co. v. Wyo. Coal Ref. Sys., Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the magistrate judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the magistrate judge's ruling); *but see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

Dated this 30th day of October, 2012.

BY THE COURT:

Kathleen M. Tafoya
United States Magistrate Judge

27